**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0540-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HERBERT E. TOZER,
a/k/a HERB TOZER,

    Defendant-Appellant.

_____

Submitted December 11, 2024 – Decided February 12, 2025

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 17-03-0223.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Jeffrey H. Sutherland, Capy May County Prosecutor, attorney for respondent (James E. Moore, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Herbert Tozer appeals from an August 11, 2023 Law Division order denying his application for post-conviction relief (PCR) without an evidentiary hearing. Because defendant failed to make a prima facie showing of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 687 (1984), we affirm.

I.

We derive the following salient facts and procedural history from the record and our decision on direct appeal, State v. Tozer, No. A-2881-18 (App. Div. June 2, 2021).

A.

Defendant's PCR petition arises from his 2018 guilty plea to one amended count of aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), in connection with the stabbing death of the victim, Robert Niemczura. It is undisputed that defendant stabbed the victim repeatedly in a motel room in Middle Township in the early morning hours in January 2017. Defendant claimed the victim had invited defendant and defendant's girlfriend to stay in his room for the night. A 9-1-1 call to police from the motel manager captured the victim, who went to the lobby for help while bleeding with a large wound to the neck, advising that, after an argument, "Herb Tozer" "got jealous of [him and defendant's

girlfriend] . . . and cut [the victim's] throat." The victim similarly gave the first aid responder defendant's name when asked who injured him. The victim later died, despite being airlifted to the hospital.

Police described the motel room as being in "disarray" reflecting "obvious signs . . . of a struggle," with "blood throughout the entire area." Defendant fled the scene and according to defendant's friend, Thomas Johnson, defendant appeared at Johnson's home, seeking to "lay low." Specifically, in his recorded statement to police, Johnson described his friend, "Herbie Tozer," arrived wearing a "white tee shirt covered with blood" and said "he had a[n] altercation with somebody up there at the Country Motel, and he ended up sticking him." Surveillance cameras showed defendant leaving the motel and stopping to attempt to wipe blood off himself with snow from the ground.

Seventeen hours after the stabbing, the police arrested defendant, who wore a shirt "stained with blood" and "had blood on his hands." Tozer, slip op. at 3. Defendant told police that prior to the stabbing, he and his girlfriend were in the victim's room at the Country Motel, and along with the victim, they "got trashed" on alcohol and pills. Defendant said the victim was his girlfriend's "cousin," and was flirting with defendant's girlfriend shortly before defendant passed out on the bed. At some point, defendant woke up and all he remembered

3

was seeing his girlfriend and the victim "on the floor . . . and he was kissing her."  Defendant admitted he grabbed a "chopping knife" off the floor and stabbed the victim in the throat before leaving the scene.[1]  He admitted he knew he had injured the victim as he could smell and taste the blood.

Defendant was subsequently indicted and charged with first-degree purposeful/knowing murder, N.J.S.A. 2C:11-3(a)(1); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree hindering prosecution, N.J.S.A. 2C:29-3(b)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d).

A week after the indictment was returned, the State presented an escalating plea offer, which provided that defendant could plead guilty up until the disposition conference to aggravated manslaughter in exchange for the State's recommending twenty-five years' imprisonment.  The offer escalated to a thirty-year sentencing recommendation if defendant pled to aggravated manslaughter before the Final Disposition Conference and provided a last and

---

[1]  By all accounts, defendant's girlfriend was too intoxicated to recall what occurred.

A-0540-23

final pretrial offer extending a sentencing recommendation of thirty years' imprisonment with no parole in exchange for defendant's plea to murder.

Defendant rejected these offers and did not enter a plea until the eve of trial. In August and September of 2017, the State filed various motions in limine, including an application to admit defendant's formal statement to police and defendant's confessions to Johnson. The court issued a written opinion granting the State's motions, finding all defendant's statements admissible.

### B.

On August 10, 2018, on the eve of trial, defendant entered an "open plea" to an amended charge of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), in exchange for the State's agreement to dismiss the murder and remaining charges and to not seek an extended-term sentence. Defendant's plea preserved his right to appeal the court's decision admitting his post-arrest statements at trial.

During the plea proceeding, the court questioned defendant regarding the voluntariness of his plea, and defendant swore he was not "under the influence of any drug, alcohol, or medication that would prevent [him] from understanding what [was] going on." He confirmed he was "pleading guilty voluntarily" and

A-0540-23

"pleading guilty because [he] believe[d] [he was] guilty," attesting that he was not "forced or threatened" to do so.

The court clearly explained defendant's sentencing exposure indicating that it could impose thirty years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and defendant acknowledged he understood and confirmed that was his "understanding of the deal." Defendant stated he was satisfied with his counsel and the plea arrangement. He represented that counsel reviewed the charges, the evidence, and the plea form with him and acknowledged that he initialed and signed the plea form and answered all the questions truthfully. The plea form signed by defendant addressed in detail defendant's understanding of his rights, his maximum sentencing exposure and maximum potential parole ineligibility, the specific terms of the plea agreement, the voluntariness of the plea, and his satisfaction with defense counsel's representation.

When asked if he had any questions, defendant inquired about the application of jail credit, as apparently a parole detainer had issued; and the court responded that it would "take into consideration . . . the time that [defendant] . . . served on parole on some other offense in making [its] decision." Defendant then indicated he had no further questions and wished to move forward with the guilty plea, acknowledging he "underst[oo]d the process"

6

having "pled guilty in court before." The court reviewed in detail and defendant acknowledged his understanding that he was giving up "important rights" to remain silent, to trial by jury, and to cross-examine witnesses and challenge evidence.

The court then elicited the factual basis and defendant agreed his behavior on January 10, 2017, constituted aggravated manslaughter. Specifically, defendant testified he "swung a knife around" while "under the influence" and agreed he did so "recklessly, manifesting extreme indifference to the value of human life [and] cause[d] by [his] own hand the death of Robert Niemczura." The court then inquired whether defendant discussed "intoxication" with his attorney, and defendant confirmed he had and that he understood he was "giving up any defense[s] [he] may or may not have had." The court also inquired as to defendant's understanding that he was giving up any defense of "diminished capacity," and defendant responded, "[y]es," confirming he "[s]hould not have been swinging a knife around in the presence of another human being." Defendant acknowledged that he caused the victim's death when he struck the victim in the neck with the knife.

A-0540-23

Defendant's attorney then questioned defendant, confirming that counsel had discussed with defendant any arguable defenses, and defendant made an informed decision to plead guilty. The following colloquy took place:

> [COUNSEL:] Mr. Tozer, in discussing the matter with [defendant's attorneys], we did discuss the possibility of a defense of others or a defense of yourself, correct?
>
> [DEFENDANT:] Yes, sir.
>
> [COUNSEL:] Because it's your position that there was a struggle, correct?
>
> [DEFENDANT:] Yes.
>
> [COUNSEL:] You don't want to pursue those defenses at this point; we discussed the possibility of those defenses, what we'd have to prove with reference to those defenses, and you don't want to pursue them at this point[?]
>
> [DEFENDANT:] No.
>
> [COUNSEL:] [Y]ou want to accept this plea?
> Additionally, we discussed the possibility of . . . pursuing, although not strictly a defense, a passion provocation theory of the case that your girlfriend was present at the time, and there may have been some things that occurred that inflamed your passions and that's why it occurred also?
>
> [DEFENDANT:] Yes.
>
> [COUNSEL:] And you don't want to pursue that as a defense strategy at this point either, correct?

A-0540-23

[DEFENDANT:]  No.

[COUNSEL:]  You want to go forward with the plea as is?

[DEFENDANT:]  Yes.

[COUNSEL:]  And again, I think [the court] already covered it, but we also discussed the possibility of intoxication reducing culpability and you don't want to pursue that defense either, correct?

[DEFENDANT:]  Yes, sir.

[COUNSEL:]  We've had conversations about that, more with [your second public defender] than myself, but you did have those conversations, correct?[2]

[DEFENDANT:]  Yes.

Thereafter, in November 2018, prior to sentencing, defendant, represented by new counsel, filed a motion to withdraw his guilty plea pursuant to Rule 3:21-1 and State v. Slater, 198 N.J. 145 (2009).  At the motion argument on January 16, 2019 before the same judge who took defendant's plea, defendant alleged he was "too hasty" in pleading guilty because he "really had a strong and valid defense of intoxication, as well as self-defense of others."  Defendant apparently

---

[2] Two public defenders represented defendant post-indictment and pre-sentence, and both appeared with defendant at the plea proceeding.  When we reference his "plea counsel" or "trial counsel" we refer to defendant's counsel collectively.

submitted a report from a doctor regarding "[his] purported psychiatric and mental health status." Defense counsel stated only that the report "does suggest that he ha[d] ongoing mental problems, which may have had an impact on the situation and [defendant] believes that because of that, he was improvident in entering the guilty plea, and he should have gone to trial because he has defenses." Counsel did not elaborate on the report, its findings, or its specific impact on particular defenses.

The State argued defendant needed a more valid reason than a "change of heart" to withdraw the plea, and here defendant could not posit a colorable claim of innocence given the "overwhelming evidence of [his] guilt" including his formal admission to stabbing the victim before fleeing the scene and "confess[ing] to a friend what he had done." The State argued that voluntary intoxication is not a defense to aggravated manslaughter and defense of others would fail as defendant "attacked a[n] unarmed man with a very large knife . . . [and while] he may have been unhappy with his girlfriend [who] had been flirting with somebody else, . . . it certainly never rose to the level that would provide a valid defense[] that allows you to use deadly force . . . ."

A-0540-23

The court reviewed the four <u>Slater</u> factors and found defendant failed to meet the elements.[3]  The court found defendant's assertions resembled more closely "buyer's remorse" and cited the very favorable nature of the plea agreement taking "[m]urder . . . off the table," as well as defendant's avoiding extended-term sentencing exposure to a life sentence if convicted.

The court considered defendant's demeanor at the time of the plea and a review of the plea transcript that demonstrated "he understood what was going on" and "had a complete appreciation of what it was he was giving up and what it was he . . . was bargaining for."  The court noted it "took pains" to explore defendant's understanding and waiver of defenses and rejected defendant's belated claims of viable defenses.  Further, reviewing the newly provided expert report, the court found "nothing in the report . . . speaks to any defense or . . . claim of innocence."  Therefore, the court concluded "defendant's plea

---

[3]  In evaluating whether a manifest injustice has occurred, courts consider the <u>Slater</u> factors:  "(1) whether the defendant asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal could result in unfair prejudice to the State or unfair advantage to the accused."  <u>Slater</u>, 198 N.J. at 157-58.  "No single <u>Slater</u> factor is dispositive; 'if one is missing, that does not automatically disqualify or dictate relief.'"  <u>State v. McDonald</u>, 211 N.J. 4, 16-17 (2012) (quoting <u>Slater</u>, 198 N.J. at 162).

was knowing, intelligent and voluntary" and denied defendant's motion to withdraw his plea.

The matter proceeded to sentencing, but before beginning the hearing, defense counsel stated that defendant wanted to advise the court defendant's "medication affected him, apparently[] throughout th[e] whole proceeding, both when he was taking the plea and during the time of th[e] incident." Defendant informed the court that his medication "messes [with his] brain" and he "can't think right on it." He said he was on that medication during the plea proceeding but told the court he was not because his "[p]ublic [d]efender told [him] to go along with everything." Defendant added, "I also know the guy tried to rape my girlfriend." Defendant also stated his new counsel was "not defending [him] the way [he] want[ed] him to."

The court questioned defendant regarding his current mental state, reiterated its denial of the motion to vacate the plea, found defendant was "competent and capable of being sentenced," and proceeded to sentencing. After arguments and analysis of the aggravating and mitigating factors, the court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3), the risk defendant will reoffend, six, N.J.S.A. 2C:44-1(a)(6), the nature and extent of defendant's

12

criminal history, and nine, N.J.S.A. 2C:44-1(a)(9), the need for deterrence of defendant and others.

The court rejected defendant's argument that the court should apply mitigating factors three, N.J.S.A. 2C:44-1(b)(3), defendant acted under a strong provocation, four, N.J.S.A. 2C:44-1(b)(4), there were substantial grounds tending to excuse or justify defendant's conduct, and five, N.J.S.A. 2C:44-1(b)(5), the victim of defendant's conduct induced or facilitated its commission,[4] and imposed a sentence of twenty-eight years in prison under NERA parole ineligibility, as well as $5,000 in restitution to the Victims of Crime Compensation Office.

Defendant filed a direct appeal on March 8, 2019, challenging the trial court's determination that his post-arrest statements to police were admissible at trial and arguing his sentence was excessive and that the restitution was improperly ordered without consideration for his ability to pay. Defendant did not appeal the court's decision denying his motion to vacate his plea.

---

[4] The court recognized defendant claimed to see the victim and his girlfriend together, but determined this did not rise to "strong provocation," given defendant's "entirely and unlawfully disproportionate" response. The court further deemed defendant's "drunkenness" did not excuse or justify "his violent and deadly behavior."

A-0540-23

On June 2, 2021, this court affirmed the trial court's order permitting the State to introduce defendant's statements at trial, "reject[ing] defendant's claim he could not have knowingly and voluntarily waived his Miranda rights because he suffered from 'some cognitive deficit.'" Tozer, slip op. at 14 (citing Miranda v. Arizona, 384 U.S. 436 (1966)). Specifically, we concluded that "argument [wa]s untethered to any evidence, and the court did not find defendant suffered from any cognitive deficit or from any form of intoxication." Ibid. We also affirmed the sentence as not excessive, but vacated the court's order requiring that defendant pay restitution as a condition of his sentence and remanded for the court to reconsider the restitution amount, if any, based on defendant's ability to pay. See id. at 23-26.

C.

In 2022, defendant timely filed a petition for PCR, accompanied by a certification asserting ineffective assistance of plea counsel.[5] Defendant claimed counsel was ineffective for: (1) "failing to properly advise [defendant] surrounding the State's plea offer"; (2) "pressuring [defendant] to accept an open plea agreement without explaining what that meant"; and (3) "failing to properly

_____

[5] Defendant claimed both public defenders who represented him post-indictment and at the plea were ineffective. He does not challenge subsequent defense counsel's representation on the motion to vacate or at sentencing.

 A-0540-23

advise[] [defendant] as to available defenses." Defendant later submitted an unsigned, unsworn certification asserting that counsel recommended that he reject the first of the escalating plea offers because counsel "initially . . . told [him] that [he] had a strong case because of the sympathetic circumstances under which [he] was defending [his] girlfriend from sexual assault." He claimed that after the plea escalated, counsel "pressured [him]" to plead guilty, but failed to explain what it meant to plead "open." He asserted that counsel did not "fully explain . . . that . . . severe intoxication . . . could be a defense," until successor counsel informed him about the intoxication defense, prompting him to attempt to withdraw his plea as he would not have pled guilty if he had this information.

Defendant later submitted an unsworn handwritten letter purportedly from Thomas Johnson, dated May 7, 2018, claiming the State had pressured him to testify against defendant and he did not wish to cooperate, and at the PCR hearing defendant asserted his plea counsel failed to investigate this letter or Johnson's claims. PCR counsel explained at the hearing that the letter was misdirected and sent to defendant's son who shared the same name and, by the time defendant received the letter, he had already pled guilty.

Defendant's PCR counsel presented these issues at oral argument, and the State countered that defendant had failed to set forth a claim under Strickland.

15

The State claimed the record belied defendant's claims of counsel's deficiencies and failed to support any defenses. The State specifically challenged the belated Johnson letter as unreliable, unsworn, and in any event not amounting to a recantation, particularly as Johnson had testified in connection with the in limine motions and confirmed his recorded statements regarding his encounter with defendant.

On August 11, 2023, the PCR court issued a comprehensive written opinion, denying defendant's PCR petition and the request for an evidentiary hearing. Noting that the plea and sentence were "very favorable to [defendant]," the court first found defendant failed to show counsel did not advise him of the escalating plea offer and, regardless, failed to show prejudice as he ultimately pled to the reduced aggravated manslaughter charge or that he would have accepted the State's initial offer at that early juncture. The court next found defendant made no showing that he was forced by counsel to plead guilty, citing extensively to the plea record and the plea court's probing inquiry of defendant after which defendant confirmed his satisfaction with counsel, his understanding of the plea and its consequences and his knowing, intelligent, and voluntary decision to enter the plea. The PCR court cited to defendant's motion to

16

withdraw the plea, expressly rejecting defendant's claims that he did not understand his plea or his defenses.

Turning to defendant's claims that counsel misadvised him as to available defenses, the PCR court again cited to the plea record, specifically highlighting the portion of defendant's dialogue with the plea court expressing his satisfaction with his trial counsel's representation and his voluntary decision to waive all potential defenses, as well as plea counsel's supplemental inquiry confirming those discussions between counsel and defendant. The PCR court further cited to the court's decision denying the motion to vacate the plea in which the court noted its deliberate and extensive attention to defendant's election to waive any defenses and plead guilty and found, having also presided over defendant's plea proceeding, defendant "had a complete appreciation of the consequences of his plea[,] . . . what . . . he was giving up[,] and what . . . he was bargaining for."

The PCR court also found defendant could not satisfy the prejudice prong as to any asserted defenses. Specifically, the court found an intoxication defense inapplicable to aggravated manslaughter and belied here by the defendant's own confession to police and to Johnson describing his awareness of stabbing the victim and describing his reason for doing so. The court also cited to defendant's actions of fleeing the scene and attempting to wash the blood off with snow as

17

evidence of his conscious mental state. The court similarly found defendant raised insufficient proof of his "diminished capacity," or a sufficient mental disease to negate his culpability. As to the defense of others assertion, the PCR court similarly found defendant failed to demonstrate prejudice as the record did not support his claim that deadly force was necessary or that defendant held an objectively reasonable and honest belief it was in this situation.

Finally, the court found the Johnson letter did not meet the requirements for sworn submissions under Rule 1:4-4 and failed to warrant further consideration. The court addressed defendant's unsworn certification, but determined, "[r]egardless of these unsworn statements, there [we]re no undisputed facts warranting an evidentiary hearing."

II.

On appeal, defendant argues:

POINT I

DEFENDANT ESTABLISHED PRIMA FACIE CLAIMS FOR [PCR], ENTITLING HIM TO AN EVIDENTIARY HEARING ON HIS CLAIMS.

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS FOR INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS AND PETITIONS FOR [PCR].

B. DEFENDANT'S COUNSELS PROVIDED HIM WITH INEFFECTIVE ASSISTANCE BY MISADVISING HIM AS TO AVAILABLE DEFENSES AND AS TO THE CONSEQUENCES OF ENTERING AN OPEN PLEA.

C. PLEA COUNSEL'S FAILURE TO INVESTIGATE DEFENDANT'S CASE BY INTERVIEWING THOMAS JOHNSON CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL.

III.

We review a PCR court's legal conclusions de novo. See State v. Harris, 181 N.J. 391, 415 (2004). Likewise, without an evidentiary hearing, this court "may exercise de novo review over the factual inferences the trial court has drawn from the documentary record." State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020) (quoting State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014)).

Defendant claims he was improperly denied an evidentiary hearing on his ineffective assistance of counsel claims. We disagree.

A.

We first recognize the well-settled controlling legal principles. New Jersey's PCR petition serves as an "analogue to the federal writ of habeas corpus." State v. Preciose, 129 N.J. 451, 459 (1992). "[N]either a substitute for direct appeal" for those criminally convicted nor a vehicle to re-litigate matters

19

already resolved on their merits, PCR proceedings can offer the best opportunity for ineffective assistance claims to be reviewed. Id. at 459-60. When petitioning for PCR, a defendant must establish, by a preponderance of the credible evidence, entitlement to the requested relief. Id. at 459. To sustain this burden, defendants must articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

Importantly, this court's review of counsel's performance under the first Strickland requirement "must be highly deferential," Strickland, 466 U.S. at 689, and we "indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance," requiring defendants to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Under Strickland's second requirement, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if . . . [it] had no effect on the judgment." Id. at 691. Errors with "some conceivable effect on the outcome" fall short of warranting relief. Id. at 693.

To show sufficient prejudice when a conviction results from a guilty plea, a defendant must show a "reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial," State v. Nuñez-Valdéz, 200 N.J. 129, 142 (2009) (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994)); see also State v. Gaitan, 209 N.J. 339, 351 (2012), and that "a decision to reject the plea bargain would have been rational under the circumstances," Padilla v. Kentucky, 559 U.S. 356, 372 (2010); see also Missouri v. Frye, 566 U.S. 134, 147 (2012) (finding as to prejudice that "it is necessary to show a reasonable probability that the end result

of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time").

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing as defendants "must allege specific facts and evidence supporting [their] allegations." State v. Porter, 216 N.J. 343, 355 (2013). "Bald assertions" will not suffice. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rule 3:22-10(c) mandates that factual claims "must" be made under oath, "by affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." Further, "[i]f the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997).

B.

Against this backdrop we conclude defendant's claims lack merit and are insufficient to warrant an evidentiary hearing. First, we note defendant's own certification was not sworn, failing to properly support his claims. Similarly, Johnson's alleged 2018 letter lacked the requisite form or attestation.

Nevertheless, because the PCR court addressed defendant's substantive claims, we do the same.

We find defendant established neither deficient performance by counsel nor resulting prejudice regarding his claims that counsel failed to properly advise him regarding the initial escalating plea offer or the consequences of an open plea. We have already recited and need not repeat the record of defendant's plea and his motion to vacate its entry. We are satisfied, as was the PCR court, that the record undermines defendant's contentions. Defendant repeatedly acknowledged his understanding of the open plea and expressed his satisfaction with counsel's advice and representation, which he memorialized in his written plea agreement, also delineating the plea terms. Further, defendant does not claim he would have accepted the initial plea offer before its expiration. He has failed to present sufficient evidence of deficient plea advice or that he would not have entered the plea—that avoided both a potential murder conviction and extended term sentencing—if properly informed.

Similarly, we are not persuaded that counsel provided faulty advice regarding available defenses. The plea court and plea counsel explored on the record defendant's understanding of any arguable applicable defense, his satisfaction with counsel's advice, and his knowing, intelligent, and voluntary

23

waiver of those defenses by entry of his equally unforced decision to plead guilty. We further concur with the PCR court's analysis of those defenses in light of the record, highlighting their inapplicability and unlikelihood of success on the facts even as confirmed by defendant.

"[I]ntoxication . . . is not a defense unless it negatives an element of the offense." N.J.S.A. 2C:2-8(a). "Self-induced intoxication can reduce the offense of purposeful or knowing murder to manslaughter or aggravated manslaughter," State v. Mauricio, 117 N.J. 402, 418 (1990), but offers no defense to those lesser charges. Further, defendant's own actions and admissions show his awareness of the circumstances at the time he stabbed the victim, even self-describing his motivation.

Likewise, the record similarly contains defendant's repeated confirmation that he understood and waived any claims of defense of others, diminished capacity, or passion provocation. As the PCR court and sentencing court both noted, defendant presented no viable claim that his disproportionate use of deadly force was justified in those circumstances and similarly failed to present evidence of a mental condition or diminished capacity that would begin to rise to the level of a viable defense. As defendant offers no facts or details explaining how counsel was deficient or how such defenses were reasonably

likely to lead to a more favorable result, these quintessentially "bald" claims do not merit an evidentiary hearing or further discussion. See State v. O'Neal, 190 N.J. 601, 619 (2007) (holding counsel was not ineffective for failing to raise meritless claims or defenses).

We similarly concur with the PCR court that the non-conforming handwritten letter allegedly drafted by Johnson years earlier did not warrant an evidentiary hearing. Further, as the record demonstrates, Johnson gave a videotaped statement to police and testified at the in limine hearing, thus rendering dubious at best any claim that defendant would not have pled guilty or that the likelihood of success at trial would have been altered by Johnson's reluctance to testify, if in fact genuine. Accordingly, none of these claims, alone or in the aggregate, warranted relief or an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0540-23